UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| JOSEPH PEPITONE, | : | **6:21 Civ. 00781 (LEK) (ATB)** |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | |
| | : | |
| NATIONAL BASEBALL HALL OF FAME | : | |
| AND MUSEUM, INC., | : | |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT NATIONAL BASEBALL HALL OF FAME AND MUSEUM'S
<u>MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE</u>**

Michael F. Buchanan
Clinton W. Morrison
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
T: 212-336-2000
F: 212-336-2222
E: mfbuchanan@pbwt.com
E: cmorrison@pbwt.com

*Attorneys for Defendant National Baseball Hall of
Fame and Museum, Inc.*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT FACTS .......................................................................................... 4

    A.    The Parties ...................................................................................... 4

            1.    The National Baseball Hall of Fame and Museum ............................... 4

            2.    Joseph Pepitone and His Complaint ................................................. 4

    B.    Pepitone Files for Bankruptcy ......................................................... 5

    C.    Pepitone Does Not List the Mantle Bat in His Bankruptcy Petition .......... 6

    D.    Pepitone Attests to the Truthfulness of His Bankruptcy Petition ............. 10

    E.    The Bankruptcy Court Accepts and Relies Upon Pepitone's Representations
         and Discharges Him from Bankruptcy ............................................. 10

    F.    Pepitone Files a Lawsuit Claiming to Own the Mantle Bat .................... 11

LEGAL STANDARD ......................................................................................... 11

ARGUMENT .................................................................................................. 12

I.       PEPITONE IS JUDICIALLY ESTOPPED FROM CLAIMING OWNERSHIP
        OF THE MANTLE BAT .......................................................................... 12

    A.    The Law of Judicial Estoppel ......................................................... 12

    B.    Pepitone Took a Position in His Bankruptcy Proceeding that is Inconsistent
         with His Complaint ..................................................................... 15

    C.    Pepitone's Prior Inconsistent Position Was Adopted by the Bankruptcy Court ........ 17

    D.    Allowing Pepitone to Pursue This Claim Would Give Him an Unfair Advantage ... 18

    E.    Judicial Integrity Would Be Undermined if Pepitone's Claims
         Were Allowed to Proceed ............................................................. 19

II.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ........................... 20

CONCLUSION ................................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelphia Recovery Trust v. Goldman Sachs & Co.*,
748 F.3d 110 (2d Cir. 2014)..................................................................................13, 14, 19

*In re Adelphia Recovery Trust*,
634 F.3d 678 (2d Cir. 2011)..............................................................................13, 14, 18, 19

*Amash v. Home Depot U.S.A., Inc.*,
12 Civ. 837 (TJM), 2013 WL 6592205 (N.D.N.Y. Dec. 16, 2013)............................14, 15, 19

*Azuike v. BNY Mellon*,
962 F. Supp. 2d 591 (S.D.N.Y. 2013)...........................................................................18, 19

*BPP Illinois, LLC v. Royal Bank of Scot. Grp. PLC*,
859 F.3d 188 (2d Cir. 2017).........................................................................13, 14, 17, 18

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
538 F.3d 116 (2d Cir. 2008)..........................................................................................13, 14

*Coffaro v. Crespo*,
721 F. Supp. 2d 141 (E.D.N.Y. 2010) ............................................................... *passim*

*Davis v. Wakelee*,
156 U.S. 680 (1895)...........................................................................................................13

*Evans v. Epimed Int'l*,
19 Civ. 805 (MAD) (CFH), 2020 WL 2497145 (N.D.N.Y. May 14, 2020)...........................12

*Galin v. IRS*,
563 F. Supp. 2d 332 (D. Conn. 2008)................................................................................17

*Galin v. United States*,
08 Civ. 2508 (JFB) (ETB), 2008 WL 5378387 (E.D.N.Y. Dec. 23, 2008) ...........................15

*Ibok v. Siac-Sector Inc.*,
05 Civ. 6584 (GBD) (GWG), 2011 WL 293757 (S.D.N.Y. Feb. 2, 2011),
*report and recommendation adopted*, 2011 WL 979307 (S.D.N.Y. Mar. 14,
2011), *aff'd*, 470 F. App'x 27 (2d Cir. 2012) ................................................................15, 19

*Julian v. Metro. Life Ins. Co.*,
17 Civ. 00957 (AJN), 2021 WL 1226749 (S.D.N.Y. Mar. 31, 2021) ...................................11

ii

*Kotbi v. Hilton Worldwide, Inc.*,
11 Civ. 3550 (TPG), 2012 WL 914951 (S.D.N.Y. Mar. 19, 2012) ........................................20

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)...........................................................................................11, 12

*Lapointe v. Target Corp.*,
16 Civ. 0216 (GTS) (CFH), 2017 WL 1397311 (N.D.N.Y. Feb. 14, 2017).................. *passim*

*McManus v. Tetra Tech Constr., Inc.*,
260 F. Supp. 3d 197 (N.D.N.Y. 2017)................................................................................20

*Negron v. Weiss*,
06 Civ. 1288 (CBA), 2006 WL 2792769 (E.D.N.Y. Sept. 27, 2006)....................................15

*New Hampshire v. Maine*,
532 U.S. 742 (2001)......................................................................................................12, 13

*Pu v. Russell Publ'g Grp., Ltd.*,
15 Civ. 3936 (VSB), 2016 WL 9021990 (S.D.N.Y. Sept. 2, 2016), *aff'd,* 683
F. App'x 96 (2d Cir. 2017) ..................................................................................................12

*Raizberg v. JV CJSC Gulfstream Sec. Sys.*,
11 Civ. 8498 (KMW), 2013 WL 1245545 (S.D.N.Y. Mar. 26, 2013) ........................... *passim*

*Rother v. NYS Dep't of Corr. & Cmty. Supervision*,
970 F. Supp. 2d 78 (N.D.N.Y. 2013)...................................................................................20

*Shaut v. Sec'y of the HHS*,
14 Civ. 0910 (TJM) (TWD), 2014 WL 7358648 (N.D.N.Y. Dec. 22, 2014)..........................5

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008)................................................................................................12

*Thomas v. JP Morgan Chase, N.A.*,
11 Civ. 3656 (JG), 2012 WL 2872164 (E.D.N.Y. July 11, 2012), *aff'd*, 532 F.
App'x 10 (2d Cir. 2013)................................................................................................11, 18

*Vazquez-Mentado v. Buitron*,
995 F. Supp. 2d 93 (N.D.N.Y. 2014) ....................................................................................4

**Statutes**

11 U.S.C. § 541(a)(1)...................................................................................................13, 14

11 U.S.C. § 727 ...................................................................................................................10

18 U.S.C. § 152 ...................................................................................................................10

18 U.S.C. § 3571 ................................................................................................10

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 11

Fed. R. Civ. P. 15(a)(2) ......................................................................................20

**Other Authorities**

*William J. Guilfoile, 1931 – 2016, 2016*, Legacy.com,
    https://www.legacy.com/us/obituaries/fdlreporter/name/william-guilfoile-
    obituary?pid=180668237 (last visited Aug. 18, 2021) ...........................................5

*Robert O. Fishel, 74, A Baseball Executive*, N.Y. Times. July 1, 1988, *available at*
    https://www.nytimes.com/1988/07/01/obituaries/robert-o-fishel-74-a-baseball-
    executive.html (last visited Aug. 18, 2021) .............................................................5

Defendant the National Baseball Hall of Fame and Museum, Inc. (the "Baseball Hall of Fame"), by and through its undersigned counsel, respectfully submits this memorandum of law, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice the Complaint filed by Plaintiff Joseph Pepitone ("Pepitone").

## PRELIMINARY STATEMENT

This case concerns the bat that the Hall of Fame Major League Baseball player, Mickey Mantle, used to hit his 500th career home run on May 14, 1967, at Yankee Stadium in the Bronx, New York (the "Mantle Bat"). The Mantle Bat was inscribed with a facsimile of Pepitone's signature and was purportedly used by Pepitone earlier in the game. With that historic home run, Mantle became only the sixth Major Leaguer and the first "switch hitter" (a player who bats from both sides of the plate) to reach this milestone. Mantle was one of the greatest players to ever play the game, and remains the all-time home run leader among switch hitters. The Mantle Bat is an important piece of baseball history given the significance of Mantle and his accomplishment of joining the exclusive 500 home run club.

Fittingly, the Mantle Bat was donated to the Baseball Hall of Fame by Mantle's club, the New York Yankees, in May 1967, days after Mantle belted his historic home run. For the past 54 years, the Mantle Bat has remained at the Baseball Hall of Fame, where it has been proudly displayed for millions of baseball fans across several generations to enjoy, along with countless other artifacts of America's pastime.

On July 7, 2021, Joseph Pepitone, a former Major League Baseball player who played for various teams in the 1960s and 1970s, filed this lawsuit against the Baseball Hall of Fame, demanding millions of dollars and seeking to remove the Mantle Bat from the Baseball Hall of Fame's permanent collection. Pepitone, who played for the Yankees in 1967, claims in his lawsuit that he owned the

Mantle Bat in May 1967, and that he has somehow owned it ever since that time, even though it has been at the Baseball Hall of Fame for 54 years. Pepitone also claims that he "loaned" the Mantle Bat to the Baseball Hall of Fame, citing nothing apart from oral conversations he claims to have had with two people who passed away years ago, and offering no explanation for why he waited more than five decades to come forward to claim "his" bat.

If this case proceeded to discovery, it would be revealed as a meritless attempt to shake down the Baseball Hall of Fame for millions of dollars by someone who did not own the Mantle Bat and contributed nothing to the bat's historical significance. Discovery would show that the New York Yankees, rather than Pepitone, owned the bat and donated it outright to the Baseball Hall of Fame in May 1967. Specifically, contemporaneous records demonstrate that the Mantle Bat was donated, not loaned, to the Baseball Hall of Fame in May 1967 and was given a formal accession number upon arrival—something that is done only for items that are part of the Baseball Hall of Fame's permanent collection. There is no record of any loan agreement for the Mantle Bat (because none exists) or any reference in any of the Baseball Hall of Fame's files to the Mantle Bat being anything other than a part of the Baseball Hall of Fame's permanent collection.

Discovery also would make clear that the endorsement deal Pepitone cites in his Complaint does not help him. In exchange for agreeing in 1959 that a facsimile of his signature could be placed on certain Louisville Slugger baseball bats, Pepitone received a set of golf clubs—not a supply of baseball bats and certainly not the Mantle Bat.

In short, Pepitone's claim that he loaned the Mantle Bat to the Baseball Hall of Fame, and that it was somehow his "for the asking" every day for the last 54 years, is supported by nothing but Pepitone's dubious say-so. Further, Pepitone conveniently waited to lay claim to the Mantle Bat until those in a position to contradict his story about loaning it had deceased, including Mantle, the Yankees

2

public relations executive with whom Pepitone claims to have had an oral agreement that the bat would be loaned, and the Baseball Hall of Fame employee whom Pepitone alleges told him at unspecified times that the bat was his "for the asking." The substantial delay in Pepitone's seeking to claim the Mantle Bat—which has been on public view for over a half-century—and the loss of these critical witnesses due to that lengthy delay would prejudice the Baseball Hall of Fame and result in dismissal of the Complaint on laches grounds at summary judgment.

But this Court can and should dismiss this case now. That is because, in his 2010 bankruptcy case, Pepitone admitted—with the assistance of counsel, under oath and penalty of perjury—that he did not own or have any interest in the Mantle Bat and had no claim to it or against the Baseball Hall of Fame. The Bankruptcy Court relied on Pepitone's sworn representations in granting a discharge of his debts, thereby shielding him and his remaining assets from his many creditors. As a result, Pepitone is judicially estopped from now claiming the Mantle Bat as his, and the Complaint should be dismissed.

Pepitone's sworn representations in his 2010 Bankruptcy Petition disclaiming any ownership interest in the Mantle Bat were true and cannot be squared with the allegations in his Complaint. If Pepitone believed the story he tells in his Complaint were true—it is not—he would have listed the Mantle Bat as an asset in his Bankruptcy Petition.

Pepitone's failure to list the Mantle Bat in his Bankruptcy Petition is fatal to his ability to bring this lawsuit. Where, as here, a debtor in bankruptcy fails to list an asset in his or her bankruptcy petition, and the Bankruptcy Court accepts that representation by discharging the debtor from bankruptcy, the debtor is judicially estopped from later bringing a lawsuit to recover the undisclosed asset or receive damages relating to the undisclosed asset. To hold otherwise would be to allow

3

debtors such as Pepitone to game the system, deprive creditors of assets to satisfy their debt, and compromise the integrity of the judicial process.  The Complaint should be dismissed.

## RELEVANT FACTS

**A.     The Parties**

   **1.     The National Baseball Hall of Fame and Museum**

Defendant, the National Baseball Hall of Fame and Museum, Inc., is a not-for-profit organization that operates the National Baseball Hall of Fame and Museum in Cooperstown, New York.  (Compl. ¶¶ 5, 7.)  The Baseball Hall of Fame, through its Museum, "is dedicated to preserving the history of baseball, honoring excellence in the game and connecting the generations of baseball enthusiasts."  (*Id.* ¶ 8.)  For over 50 years, the Baseball Hall of Fame has proudly owned and displayed the Mantle Bat in its Museum for the public to enjoy.  (*Id.* ¶¶ 32, 33.)

   **2.     Joseph Pepitone and His Complaint**

Plaintiff, Joseph Pepitone, is a resident of New Jersey and a former baseball player who last played in Major League Baseball in 1973.  (Compl. ¶ 9.)  In his Complaint, filed on July 7, 2021, Pepitone claims that the Mantle Bat is, and since May 1967, has been, his "personal property" that has been on "loan" to the Baseball Hall of Fame.  (*Id.* ¶¶ 1, 24, 29-32.)  In support of his claim to the Mantle Bat, Pepitone cites only to an endorsement deal that on its face did not purport to convey ownership of the Mantle Bat—or any bat—to him.  (*Id.* ¶¶ 21-24; Buchanan Decl.[1] Ex. 1.[2])  In support

---

[1] Cites to "Buchanan Decl. Ex." are to exhibits attached to the Declaration of Michael F. Buchanan, which is filed contemporaneously herewith.  Redactions have been applied to these exhibits, consistent with the requirements of Rule 5.2(a) of the Local Rules of Practice of the United States District Court for the Northern District of New York.

[2] *See Vazquez-Mentado v. Buitron*, 995 F. Supp. 2d 93, 97 n.3 (N.D.N.Y. 2014) ("[I]n deciding a motion to dismiss, a court can consider 'documents incorporated by reference in the complaint.'") (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

of his claim that the Mantle Bat was loaned—rather than donated outright—to the Baseball Hall of Fame, Pepitone references a purported oral agreement with a former Yankees public relations executive (Bob Fishel) who passed away in 1988, and purported oral assurances made to Pepitone on unspecified dates by a former Baseball Hall of Fame employee (Bill Guilfoile) who passed away in 2016.  (Compl. ¶¶ 29-31, 34.)[3]

## B.      Pepitone Files for Bankruptcy

On April 22, 2010, Pepitone filed for bankruptcy under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York before the Honorable Judge Dorothy Eisenberg.  (Buchanan Decl. Ex. 2 (*In re Pepitone*, Ch. 7 Case No. 8-10-72883-DTE (E.D.N.Y. Bankr., Apr. 22, 2010), ECF No. 1) (hereinafter, *In re Pepitone*).)  Pepitone was represented by counsel in connection with completing and filing a bankruptcy petition, including the related official schedules and statements of financial affairs that are required of all Chapter 7 debtors (collectively, the "Bankruptcy Petition").  (*See id.* at 3, 4, 36; Buchanan Decl. Ex. 3 (ECF No. 2 in *In re Pepitone*).)  In his Bankruptcy Petition, Pepitone was required—under oath and on penalty of perjury—to list all of his assets, including all personal property, collectibles and sports equipment, whether in his custody or the custody of anyone else, any vested or contingent claims, and any contracts of any sort.

---

[3] *Robert O. Fishel, 74, A Baseball Executive*, N.Y. Times.  July 1, 1988, *available at* https://www.nytimes.com/1988/07/01/obituaries/robert-o-fishel-74-a-baseball-executive.html (last visited Aug. 18, 2021); *William J. Guilfoile, 1931 – 2016*, Legacy.com, https://www.legacy.com/us/obituaries/fdlreporter/name/william-guilfoile-obituary?pid=180668237 (last visited Aug. 18, 2021).  *See generally Shaut v. Sec'y of the HHS*, 14 Civ. 0910 (TJM) (TWD), 2014 WL 7358648, at *1 & n.2 (N.D.N.Y. Dec. 22, 2014) (courts may take judicial notice of obituaries published on the Internet).

Despite listing items of nominal value, like compact discs worth $100, and rifles worth $400, Pepitone did not list the Mantle Bat as an asset in his Bankruptcy Petition.  He did not list any claims against the Baseball Hall of Fame or any claims concerning the Mantle Bat.  He did not list any contracts—oral, written or otherwise—with anyone concerning the Mantle Bat.  For Pepitone, who owned no real estate and claimed total cash holdings of about $550, the Mantle Bat easily would have been his most valuable asset.

Pepitone signed the Bankruptcy Petition in numerous places, attested that he was doing so under penalty of perjury, and acknowledged that making false statements or concealing assets in that filing would subject him to hundreds of thousands of dollars in fines and up to five years in federal prison.

**C.     Pepitone Does Not List the Mantle Bat in His Bankruptcy Petition**

The Bankruptcy Petition included several sections which required Pepitone to disclose his alleged interest in the Mantle Bat.  If he believed that the story in his Complaint were true, he would have disclosed—indeed he was ***legally obligated*** to disclose—that interest in response to several of the questions that appear in the official bankruptcy schedules.  He did not.

For example, "**SCHEDULE B – PERSONAL PROPERTY**" required Pepitone to "list all personal property of . . . whatever kind" that he claimed to own as of April 22, 2010.  (Buchanan Decl. Ex. 2 at 10.)  The instructions for this portion of the Bankruptcy Petition provided further: "If the debtor has no property in one or more of the categories, place an 'x' in the appropriate position in the column labeled 'None'."  (*Id.*)  Pepitone also was instructed as follows in this portion of the Bankruptcy Petition: "If the property is being held for the debtor by someone else, state that person's name and address under 'Description and Location of Property'." (*Id.*)

6

Pepitone was required to list in Schedule B to his Bankruptcy Petition several different "Type[s] of Property" that he owned, including several categories which would have plainly called for the inclusion of the Mantle Bat if Pepitone actually believed the allegations that are in his Complaint.  But under each of these categories, Pepitone failed to list the Mantle Bat or any contract or claim related to it.  Specifically:

- Under "Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and *other collections or collectibles*," Pepitone listed only "Compact Discs" valued at $100.  (Buchanan Decl. Ex. 2 at 10 (emphasis added).)

- Under "Firearms and *sports*, photographic, and other hobby *equipment*," Pepitone listed only "3 Rifles," which he valued at $400.  (*Id.* (emphases added).)[4]

- Under "*Equitable or future interests*, life estates, and *rights or powers exercisable for the benefit of the debtor* other than those listed in Schedule A – Real Property," Pepitone placed an "X" under the column titled "NONE," indicating that he owned no such property.  (*Id.* at 11 (emphases added).)

- Under "*Other contingent and unliquidated claims of every nature*, including tax refunds, counterclaims of the debtor, and rights to set off claims," Pepitone placed an "X" under the column titled "NONE," indicating that he owned no such property.   (*Id.* (emphasis added).)

- Under "*Other personal property of any kind not already listed*, " Pepitone placed an "X" under the column titled "NONE," indicating that he owned no personal property beyond the specific items he listed in Schedule B in his Bankruptcy Petition.  (*Id.* at 12 (emphasis added).)

Pepitone did not list the Mantle Bat or any contracts or claims relating to the Mantle Bat in response to any of these questions.  (*See id.*)  Images of the relevant portions of Schedule B to Pepitone's Bankruptcy Petition are set forth immediately below for the Court's convenience:

---

[4] In Schedule C to the Bankruptcy Petition, Pepitone again confirmed that the only "Collectibles" he owned were "Compact Discs" valued at $100, and that the only "Sports . . . Equipment" he owned consisted of "3 Rifles" valued at $400.  (Buchanan Decl. Ex. 2 at 13.)

Case 8-10-72883-dte   Doc 1   Filed 04/22/10   Entered 04/22/10 10:44:08

B6B (Official Form 6B) (12/07)

In re     **Joseph A. Pepitone**        Case No. _____

                       Debtor

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 5.   Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | Compact Discs | - | 100.00 |
| 8.   Firearms and sports, photographic, and other hobby equipment. | | 3 Rifles | - | 400.00 |
| 19.   Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 21.   Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 35.   Other personal property of any kind not already listed. Itemize. | X | | | |

In Schedule G to the Bankruptcy Petition, Pepitone was required to (a) ***"[d]escribe all executory contracts of any nature and all unexpired leases of real or personal property***"; (b) "[s]tate [the] nature of [his] interest in [the] contract"; and (c) "[p]rovide the names and complete mailing addresses of all other parties to each lease or contract described." (Buchanan Decl. Ex. 2 at 19

(emphasis added).)  Pepitone listed only the lease for his residence and the names and address of his

landlords.  (*See id*.)  Pepitone did not list any oral contract or agreement concerning the Mantle Bat,

and did not list the Yankees, Bob Fishel, Bill Guilfoile, or the Baseball Hall of Fame as a party to any

contract or agreement.  (*See id*.)  For ease of reference, an image of the relevant portion of Schedule

G to Pepitone's Bankruptcy Petition is set forth immediately below:



Pepitone also represented in the Bankruptcy Petition that he owned no "property which has

been in the hands of a custodian . . . within **one year** immediately preceding the commencement of

this case" (Buchanan Decl. Ex. 2 at 26 (emphasis in original)) in a section titled "**STATEMENT OF**

**FINANCIAL AFFAIRS**."  An image of the relevant portion of the Statement of Financial Affairs in

Pepitone's Bankruptcy Petition is set forth immediately below:



9

**D.      Pepitone Attests to the Truthfulness of His Bankruptcy Petition**

Pepitone did not make the representations in his Bankruptcy Petition lightly.  Indeed, Pepitone attested with his signature that he had "read the . . . summary and schedules" and "statement of financial affairs" in his Bankruptcy Petition, and that those disclosures "[we]re true and correct to the best of [his] knowledge, information, and belief." (Buchanan Decl. Ex. 2 at 23, 31.)  On three separate instances in his Bankruptcy Petition, Pepitone declared "under penalty of perjury" that the information he provided therein was "true and correct."  (*Id*. at 4, 23, 31.)

Pepitone, who was being advised by counsel, acknowledged numerous times in his Bankruptcy Petition with his signature that he was aware that lying in that filing carried serious consequences.  (*See* Buchanan Decl. Ex. 2 at 23 ("*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571." (emphasis in original)); *id.* at 31 ("*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571*." (emphasis in original)).)

**E.      The Bankruptcy Court Accepts and Relies Upon Pepitone's Representations and Discharges Him from Bankruptcy**

On August 12, 2010, in reliance on the representations Pepitone made in his Bankruptcy Petition, including his representation that he had no ownership interest in, contract concerning or claim regarding, the Mantle Bat, Judge Eisenberg entered an Order granting Pepitone a discharge pursuant to Section 727 of the Bankruptcy Code.  (Buchanan Decl. Ex. 4 (ECF No. 20 in *In re Pepitone*).)  On August 14, 2010, the docket in the bankruptcy proceeding confirmed that Pepitone's many creditors had been notified that his debts had been discharged by the Bankruptcy Court. (Buchanan Decl. Ex. 5 at 4 (ECF No. 21 in *In re Pepitone*).)  As a result, Pepitone's obligations to an array of creditors were wiped out—their claims against him legally extinguished:  over $130,000 in

debt was "discharged without payment." (Buchanan Decl. Ex. 6 at 5 (*In re Pepitone* Minute Entry dated July 15, 2011).)

On July 18, 2011, Judge Eisenberg issued a Final Decree, formally closing Pepitone's bankruptcy proceeding.  (Buchanan Decl. Ex. 7 (ECF No. 22 in *In re Pepitone*).)

**F.      Pepitone Files a Lawsuit Claiming to Own the Mantle Bat**

On July 7, 2021, ten years after Judge Eisenberg discharged his debts and closed his bankruptcy case in reliance on the representations in his Bankruptcy Petition, Pepitone filed the Complaint in the above-captioned lawsuit before this Honorable Court.  (ECF No. 1.)

In the Complaint, Pepitone alleges that the Mantle Bat is and has been his "personal property" since at least May 1967; that he has been the "owner" of the bat that entire time; that at no time did Pepitone ever "gift, sell, assign, or in any way transfer[] his sole ownership interest in the [Mantle] Bat to any person or entity"; and that on any day over the last 54 years the Mantle Bat has been on display at the Baseball Hall of Fame for baseball fans to enjoy, Pepitone had the unconditional right to simply "ask" for "his bat" to be "returned to him at any time upon his request."  (Compl. ¶¶ 1, 11, 19, 21, 23-24, 31, 34, 35, 39.)

## LEGAL STANDARD

"A party may raise a defense of . . . judicial estoppel on a motion to dismiss pursuant to Rule 12(b)(6) where the basis for that defense is set forth on the face of the complaint or established by public record." *Julian v. Metro. Life Ins. Co.*, 17 Civ. 00957 (AJN), 2021 WL 1226749, at *3 (S.D.N.Y. Mar. 31, 2021) (citation and internal quotation marks omitted).  In "deciding a Rule 12(b)(6) motion," a court "may consider not only the complaint, but also any relevant documents that may be judicially noticed." *Thomas v. JP Morgan Chase, N.A.*, 11 Civ. 3656 (JG) (RML), 2012 WL 2872164, at *6 (E.D.N.Y. July 11, 2012) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d

Cir. 1991)), *aff'd*, 532 F. App'x 10 (2d Cir. 2013); *see Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed by the District Court are not considered matters outside the pleadings.")  Matters that may be judicially noticed include "public documents or matters of public records." *Evans v. Epimed Int'l*, 19 Civ. 805 (MAD) (CFH), 2020 WL 2497145, at *1 n.1 (N.D.N.Y. May 14, 2020).

It is well established that courts "may take judicial notice of documents and other related filings made in the Bankruptcy Court." *Lapointe v. Target Corp.*, 16 Civ. 0216 (GTS) (CFH), 2017 WL 1397311, at *2 n.1 (N.D.N.Y. Feb. 14, 2017).  Likewise, a "District Court, in taking judicial notice of documents filed on other dockets, may then find that a litigant is judicially estopped from taking a position contrary to one already propounded" in that previously filed document. *Pu v. Russell Publ'g Grp., Ltd.*, 15 Civ. 3936 (VSB), 2016 WL 9021990, at *7 (S.D.N.Y. Sept. 2, 2016), *aff'd,* 683 F. App'x 96 (2d Cir. 2017).

## ARGUMENT

## I.   PEPITONE IS JUDICIALLY ESTOPPED FROM CLAIMING OWNERSHIP OF THE MANTLE BAT

Pepitone's failure to disclose or in any way reference the Mantle Bat in his Bankruptcy Petition—representations made under penalty of perjury with the assistance of legal counsel and adopted by the Bankruptcy Court to discharge Pepitone's debts—judicially estops him from pursuing the claims set forth in his Complaint.  For the reasons set forth below, the Complaint should be dismissed with prejudice.

### A.   The Law of Judicial Estoppel

Under the doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749

(2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  The "purpose" of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50 (internal quotation marks and citations omitted).  In this District and in the Second Circuit, judicial estoppel applies where "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Lapointe*, 2017 WL 1397311, at *5 (quoting *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015)).  The Second Circuit also on occasion has examined (3) whether "the party asserting the two positions would derive an unfair advantage," although it "do[es] not always require a showing of unfair advantage." *BPP Illinois, LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 194 (2d Cir. 2017) (citing *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-96 (2d Cir. 2011).)  Courts in this Circuit also consider (4) whether "allow[ing] a party . . . to take a[n inconsistent] position" in a subsequent proceeding would pose a "risk to judicial integrity." *Adelphia Recovery Trust v. Goldman Sachs & Co.*, 748 F.3d 110, 116-17 (2d Cir. 2014).

Judicial estoppel is "routinely" applied "when a position taken in bankruptcy court is inconsistent with the position taken in another court." *Raizberg v. JV CJSC Gulfstream Sec. Sys.*, 11 Civ. 8498 (KMW), 2013 WL 1245545, at *4 (S.D.N.Y. Mar. 26, 2013) (collecting cases).  That is because "[i]n the bankruptcy context, judicial estoppel protects the integrity of the bankruptcy system, which depends on the debtor's complete and honest disclosure of all assets." *Id*.

The Bankruptcy Code "defines the bankruptcy estate as including 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122-23 (2d Cir. 2008) (quoting 11 U.S.C. § 541(a)(1)).  Because "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is

within the reach of § 541," the debtor is "obligat[ed] to disclose *all* his [or her] interests at the commencement of a [bankruptcy] case" and make a "full and complete disclosure of [his or her] finances." *Chartschlaa*, 538 F.3d at 122 (emphasis in original). *See Adelphia Recovery Tr.*, 748 F.3d at 118 ("Determination of the ownership of assets is at the core of the bankruptcy process, . . . . [and] [i]t is . . . crucial, both for the sake of finality and the needs of debtors and creditors, that claims to ownership of various assets be determined in the bankruptcy proceedings.")  As such, when a debtor does not list a given asset in his or her bankruptcy disclosures, that non-disclosure is tantamount to a sworn representation that the debtor does not have any ownership interest of any kind in that asset. *See, e.g.*, *Amash v. Home Depot U.S.A., Inc.*, 12 Civ. 837 (TJM), 2013 WL 6592205, at *4 (N.D.N.Y. Dec. 16, 2013) (failure to list claims in bankruptcy petition equivalent to debtor representing "that [he] had no outstanding claims or lawsuits against another party"); *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145-46 (E.D.N.Y. 2010) (failure to list painting as asset in bankruptcy petition equivalent to representation "that [the debtor] had no ownership interest in the Painting").

Thus, judicial estoppel is regularly applied to bar claims where either the claim itself or the asset underlying the claim was not disclosed by the plaintiff as a debtor in a prior bankruptcy. *See, e.g.*, *BPP Illinois, LLC*, 859 F.3d at 194 (dismissing fraud and related claims on judicial estoppel grounds where party previously failed to list those claims as assets in bankruptcy filings); *Adelphia Recovery Tr.*, 748 F.3d at 119-20 (dismissing fraudulent conveyance claim on judicial estoppel grounds where underlying property that claim concerned was not listed as an asset owned by the plaintiff when it was a debtor in bankruptcy); *Adelphia Recovery Tr.*, 634 F.3d at 695-99 (dismissing fraudulent conveyance claim on judicial estoppel grounds where plaintiff had failed to disclose claim when it was a debtor in bankruptcy); *Lapointe*, 2017 WL 1397311, at *5-7 (dismissing claims against employer for misclassifying plaintiff's employment status on judicial estoppel grounds where

14

plaintiff had failed to disclose any claims against his employer when he was a debtor in bankruptcy); *Amash*, 2013 WL 6592205, at \*4  (dismissing claims for FLSA violation against former employer that plaintiff had failed to disclose in bankruptcy); *Coffaro*, 721 F. Supp. 2d at 146-48 (party who had failed to disclose any ownership interest in painting was judicially estopped "from asserting a claim to the Painting" and, as a result of that ruling, other party was deemed to "ha[ve] superior title to [the painting]"); *Galin v. United States*, 08 Civ. 2508 (JFB) (ETB), 2008 WL 5378387, at \*10-11 (E.D.N.Y. Dec. 23, 2008) (plaintiff's claim predicated on allegation that "she was the equitable owner of [certain real property]" dismissed on judicial estoppel grounds where she took the "inconsistent . . . position during her bankruptcy filing that she had no interest in any real property"); *Negron v. Weiss*, 06 Civ. 1288 (CBA), 2006 WL 2792769, at \*3 (E.D.N.Y. Sept. 27, 2006) (plaintiffs' suit seeking declaration they were lawful owners of apartment and damages from dispossession thereof dismissed on judicial estoppel grounds where plaintiffs had failed to disclosed any interest in the apartment when they were debtors in bankruptcy); *Raizberg*, 2013 WL 1245545, at \*3-6 (dismissing plaintiff's claims for, *inter alia*, conversion, predicated on ownership of stocks and other corporate interests where he failed to disclose any such assets in earlier bankruptcy); *Ibok v. Siac-Sector Inc.*, 05 Civ. 6584 (GBD) (GWG), 2011 WL 293757, at \*7 (S.D.N.Y. Feb. 2, 2011) (party who failed to disclose employment discrimination claim in prior bankruptcy judicially estopped from later asserting claim), *report and recommendation adopted*, 2011 WL 979307 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 470 F. App'x 27 (2d Cir. 2012).  The same outcome should apply here.

### B.    Pepitone Took a Position in His Bankruptcy Proceeding that is Inconsistent with His Complaint

By failing to list or reference his purported ownership interest in the Mantle Bat in his Bankruptcy Petition (*see supra* at pp. 5-10), Pepitone swore under oath that he had no ownership interest in, contract concerning, or legal claim relating to, the Mantle Bat.  While Pepitone's

disclaiming ownership in the Mantle Bat during his bankruptcy proceeding is consistent with the truth and the contemporaneous records showing that the Mantle Bat was donated outright to the Baseball Hall of Fame in May 1967, that representation is fundamentally inconsistent with the positions he advances in his Complaint.  After receiving a discharge of his debts, Pepitone now alleges that the Mantle Bat was his "personal property" and his "for the asking" for the last 54 years because he "own[ed]" the bat that entire time, since he allegedly agreed to a mere "loan" of the bat to the Baseball Hall of Fame in May 1967.  (*See supra* at p. 11.)  Those allegations cannot be squared with the representations that Pepitone made in his Bankruptcy Petition or with a bankruptcy case that resulted in the discharge of more than $130,000 worth of claims.

*Coffaro v. Crespo*, 721 F. Supp. 2d 141, is directly on point.  In *Coffaro*, when the defendant, Crespo, filed for bankruptcy in 1994, he did not list a painting by Salvador Dali titled "Folle Folle Folle Minerva" (the "Dali Painting") as an asset in his bankruptcy schedules nor did he list any "art objects" or claims against anyone for conversion or theft of the Dali Painting.  *See id.* at 143.  The Bankruptcy Court accepted Crespo's representations and entered an order discharging him of his debts.  *See id.* at 145-46.  Years later, Crespo became embroiled in a dispute with the eventual plaintiff, Coffaro, as to who was the rightful owner of the Dali Painting.  In 2008, Coffaro filed suit against Crespo seeking a declaratory judgment that he was the true owner of the Dali Painting and bringing claims for, *inter alia*, conversion.  *See id.* at 142.  In ruling for the plaintiff, the court held that Crespo was "judicially estopped from asserting ownership [of the Dali Painting] in the current proceeding" due to his failure to list the Dali Painting as an asset in his prior bankruptcy.  *Id*. at 145. The court explained that Crespo had "an affirmative obligation to disclose all assets to the bankruptcy court," and held that, because Crespo did not list the Dali Painting or any claim related thereto, his position in the subsequent lawsuit that he was the true owner of the Dali Painting was "clearly

16

inconsistent with the position he took earlier in his bankruptcy proceeding." *Id*. at 145.  *See also Raizberg*, 2013 WL 1245545, at *3-4 ("[p]laintiff's claims . . . predicated on an ownership interest in [certain stock and corporate interests] during the period of the bankruptcy proceeding" were "'clearly inconsistent' with his earlier position before the bankruptcy court," where he "represented that he held no stock or corporate interests").

As with the Dali Painting in *Coffaro*, so too with the Mantle Bat here.  Pepitone's allegations of continuous ownership of the Mantle Bat from 1967 through 2021 simply cannot be reconciled with his representations to the Bankruptcy Court in 2010 that he had no ownership interest in, contract concerning, or legal claims relating to, the Mantle Bat.  At bottom, Pepitone's entire "theory" of recovery in his Complaint is premised on "alleg[ations] that he held, or believed he held, an ownership interest in" an asset as to which he previously disclaimed any ownership interest before the Bankruptcy Court.  *Raizberg*, 2013 WL 1245545, at *4-5.  Pepitone's positions here and in the Bankruptcy Petition present "an irreconcilable inconsistency warranting the application of judicial estoppel."  *Id.*

**C.    Pepitone's Prior Inconsistent Position Was Adopted by the Bankruptcy Court**

Pepitone never amended or supplemented his Bankruptcy Petition to disclose any interest in the Mantle Bat: not before Judge Eisenberg entered the discharge order and not after.  The discharge order was predicated on the disclosures contained in the Bankruptcy Petition, and it relieved Pepitone of more than $130,000 in liability to creditors.  (*See supra* at pp. 10-11.)

Under well-settled law, "[a] bankruptcy court is considered to have adopted a party's assertion in a bankruptcy proceeding when it confirms a plan in which creditors release claims against the debtor."  *Coffaro*, 721 F. Supp. 2d at 146 (quoting *Galin v. IRS*, 563 F. Supp. 2d 332, 339 (D. Conn. 2008)).  *See BPP Illinois, LLC*, 859 F.3d at 194 n.4 ("By confirming the plan, the bankruptcy court

17

relied on BPP's schedule of assets, thereby implicitly (but categorically) accepting the accuracy of BPP's list of assets."); *Lapointe*, 2017 WL 1397311, at *6 ("[T]he Bankruptcy Court adopted Plaintiff's inconsistent position when it granted him a discharge.") *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 598-600 (S.D.N.Y. 2013) ("[T]he bankruptcy court adopted plaintiff's representation that such a claim did not exist when it discharged his debts and closed the bankruptcy case.") Accordingly, the second element of judicial estoppel is easily met.

### D.       Allowing Pepitone to Pursue This Claim Would Give Him an Unfair Advantage

While the Second Circuit "do[es] not always require" courts to consider whether a party would receive an "unfair advantage" if judicial estoppel were not applied, *BPP Illinois, LLC*, 859 F.3d at 194 (citing *In re Adelphia Recovery Tr.*, 634 F.3d at 695-96), that element is readily met.

A party "obtain[s an] unfair advantage" where he fails to disclose assets or claims in a bankruptcy proceeding and then emerges from bankruptcy, "preserving his ability to recover on [the asset or] the claim himself." *Azuike*, 962 F. Supp. 2d at 599. *See BPP Illinois, LLC*, 859 F.3d at 194 ("Regardless of whether (or not) BPP actually knew of its possible LIBOR claims, and whether (or not) the claims were of great value, BPP's assertion of the claims now would allow it to enjoy an unfair advantage at the expense of its former creditors, who had a right to consider the claims during the bankruptcy proceeding."); *Thomas*, 2012 WL 2872164, at *8 (plaintiff's "inconsistent positions [in advancing claim she failed to disclose in bankruptcy] have provided her with an unfair advantage since she has received the benefit of a discharge of her debts while still possessing the ability to recover on her claims in full").

Those cases compel a finding of unfair advantage here, where Pepitone received a discharge of his debts totaling over $130,000 through bankruptcy and would, absent judicial estoppel, be permitted to pursue a claim to the Mantle Bat for his own benefit at the expense of his creditors.

Allowing Pepitone to pursue recovery of millions of dollars for his personal gain based on an asset he never disclosed to his creditors or to the Bankruptcy Court would be an "unfair advantage" warranting the application of judicial estoppel.

###### E.    Judicial Integrity Would Be Undermined if Pepitone's Claims Were Allowed to Proceed

Allowing Pepitone to pursue this lawsuit to recover an asset he failed to disclose in his Bankruptcy Petition "would threaten the integrity of the bankruptcy process by encouraging parties to alter their positions as to ownership of assets as they deem their litigation needs to change, leaving courts to unravel previously closed proceedings," and "would allow parties an opportunity to 'play[] fast and loose' with the requirements of the bankruptcy process and inject an unacceptable level of uncertainty into its results–exactly the result that the doctrine of judicial estoppel is intended to avoid." *Adelphia Recovery Tr.*, 748 F.3d at 119; *see In re Adelphia Recovery Trust*, 634 F.3d at 696 (integrity of the judicial process is threatened where parties take a short term position that risks being inconsistent with its future position, irrespective of whether they are "knowingly [lying]" in doing so). That is because "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Azuike*, 962 F. Supp. 2d at 599-600 (citation and internal quotation marks omitted).

With these principles in mind, courts forbid litigants like Pepitone from reversing course once they emerge from bankruptcy to pursue previously disclaimed assets because of the threat such behavior would have to the integrity of the judicial system and the bankruptcy process itself. *See, e.g.*, *Amash*, 2013 WL 6592205, at *4 ("[A]llowing Plaintiff to pursue this lawsuit absent full and honest disclosure of his assets would violate the integrity of the bankruptcy system.") (quoting *Ibok*, 2011 WL 979307, at *3); *Raizberg*, 2013 WL 1245545, at *3-6 ("absent a finding of judicial estoppel, judicial integrity would be undermined" if plaintiff were "permitt[ed] . . . to assert a contrary

position in this case" than the one he advanced in bankruptcy); *Kotbi v. Hilton Worldwide, Inc.,* 11 Civ. 3550 (TPG), 2012 WL 914951, at *3 (S.D.N.Y. Mar. 19, 2012) ("It would violate the integrity of the bankruptcy system to permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently assert those claims for his own benefit in a separate proceeding.") (citation and internal quotation marks omitted).

Pepitone should not be permitted to compromise the integrity of the bankruptcy system to pursue his meritless claims over an asset—the Mantle Bat—he repeatedly swore under oath he did not own. His Complaint should be dismissed on judicial estoppel grounds.

## II.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

While leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "[l]eave to amend should . . . be denied if any amendment would be futile." *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 91 (N.D.N.Y. 2013). "An amendment is considered futile," where, as here, an "amended pleading . . . would be subject to a successful motion to dismiss." *McManus v. Tetra Tech Constr., Inc.*, 260 F. Supp. 3d 197, 210 (N.D.N.Y. 2017) (citation and internal quotation marks omitted). As set forth above, Pepitone is judicially estopped from making any claim of ownership to the Mantle Bat and thus cannot bring an action to recover the bat or to receive remuneration from allegedly being deprived of its possession, regardless of how he may seek to amend his Complaint. (*See supra* at pp. 12-20.) Accordingly, his Complaint should be dismissed with prejudice, and any motion for leave to amend should be denied.

## **CONCLUSION**

For the foregoing reasons, the Baseball Hall of Fame respectfully requests that the Court grant its motion to dismiss the Complaint with prejudice.

Dated:      New York, New York
            August 20, 2021

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____

Michael F. Buchanan (Bar Roll #702975)
Clinton W. Morrison (Bar Roll #702976)
1133 Avenue of the Americas
New York, New York 10036-6710
T:  212-336-2000
F:  212-336-2222
E:  mfbuchanan@pbwt.com
E:  cmorrison@pbwt.com

*Attorneys for Defendant National Baseball Hall of Fame and Museum, Inc.*

21

## **CERTIFICATE OF SERVICE**

I, Michael F. Buchanan, hereby certify, pursuant to 28 U.S.C. § 1746, that on August 20,

2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which

will automatically send e-mail notification of such filing to all counsel of record.

Dated: August 20, 2021
         New York, New York

By: _____

        Michael F. Buchanan (Bar Roll #702975)